JUDGE KATHLEEN CARDONE

FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS MAY -9 PM 4:37
~~AUSTIN~~ DIVISION
EL PASO

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY

**STEVEN OPELLA**,

*Plaintiff*,

v.                                              Case No.: _____

**EP25CV0170**

EVERARD BURKE INC.,
DIGITAL FINANCE RESEARCH CORP.
CLARE ANNA CATHRINE GOHEE DE BUHR,
HANNA ELIZABETH POLANSKY, EVELYN SHELLEY

*Defendants*.

_____/

### COMPLAINT FOR DAMAGES *(Jury Trial Demanded)*

## I. INTRODUCTION

1. Plaintiff **Steven Opella** brings this action against Defendants **Everard Burke Inc.** ("EB") and **Digital Finance Research Corp.** ("DFRC") (collectively, "Defendants") for engaging in fraudulent and deceptive practices involving a purported AI-driven cryptocurrency trading program. Through a calculated scheme of misrepresentation, wire fraud, and deceptive practices, Defendants orchestrated a Ponzi scheme designed to solicit and misappropriate substantial financial resources from Plaintiff under false pretenses.

## II. PARTIES

2. **Plaintiff Steven Opella** is a resident of the Western District of Texas and has suffered significant financial harm as a direct result of Defendants' fraudulent activities. All monies that were withdrawn were done so in El Paso Texas.

3. **Defendant Everard Burke Inc.** is a Delaware-incorporated financial services corporation offering cryptocurrency trading platforms, with principal operations in San Francisco California.

4. **Defendant Digital Finance Research Corp.** is a New Jersey-incorporated technology firm that purports to develop AI trading tools but engages in fraudulent investment schemes, including deceptive AI-driven financial products targeting Texas consumers.

5. **Defendant** CLARE ANNA CATHRINE GOHEE DE BUHR, is a California Resident and owns Everard Burke Inc.

6. **Defendant HANNA ELIZABETH POLANSKY is a New Jersey Resident and Owns Digital Finance Research Corp.**

7. **Evelyn Shelley is a New Jersey Resident and works for Digital Finance Research Corp and Everard Burke Inc.**

8. **All Defendants will be referred to as "Defendants".**

## III. JURISDICTION AND VENUE

5. **Subject Matter Jurisdiction** exists under **28 U.S.C. § 1331**, as this action arises under federal law, including the **Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962 et seq.), Wire Fraud (18 U.S.C. § 1343), and the Computer Fraud and Abuse Act (CFAA) (18 U.S.C. § 1030).**

6. **Supplemental Jurisdiction** applies to Plaintiff's state-law claims under **28 U.S.C. § 1367** as they arise from the same facts and circumstances.

7. **Venue** is proper under **28 U.S.C. § 1391(b)(2)** because substantial acts in furtherance of Defendants' fraudulent scheme occurred within this District, where Plaintiff was recruited, executed transactions, and suffered financial injury.

8. **Statement of the Case and Facts: Introduction** This case concerns an investment arrangement initiated by the Digital Finance Research Institute and Everard Burke Inc., and individual Defendants which engaged the claimant to assist in training an artificial intelligence trading program. Over the course of several months, the claimant followed instructions from representatives of the Institute and the EB Trading Platform, ultimately engaging in a series of financial transactions that resulted in substantial gains.

9. **Initial Contact and Test Trades.** On January 6, 2025, the claimant was contacted by the representatives of Defendants and Digital Finance Research Institute with a proposition to assist in training their artificial intelligence trading program. As part of this initiative, the claimant opened a trading account with Everard Burke ("EB"), upon which an initial deposit of $300 was made by the Institute. The claimant was informed they would receive "Trading Signals" providing guidance on buying and selling assets.

10. **Program Membership and Additional Deposits.** On January 7, 2025, Administrative Assistant Evelyn Shelley directed the claimant to request membership in Professor Johnson's "20 Game Winning Streak" trading program, which they did. Later that day, Ms. Shelley instructed the claimant to return the $300 in test capital but permitted them to retain any profits earned from the test trades.

11. **Personal Fund Transfers and Initial Profits.** On January 8, 2025, Ms. Shelley advised the claimant to prepare their own funds for trading. Under her guidance, the claimant transferred $2,000 from their Coinbase account into the EB Trading Platform, adding to the previously earned $840 in profits for a total balance of $2,800.

12. On January 9, 2025, the claimant transferred an additional $10,000 from their Charles Schwab brokerage account to the EB Trading Platform. On January 10, 2025, after further trading activity, total funds in the EB account had reached $16,449, reflecting $8,200 in total profit. The claimant then prepared another wire transfer of $20,000 from Schwab.  On January 16, 2025 Defendants provided a matrix contract to Plaintiff where the parties executed said contract.  Exhibit 1.

13. **Major Investment Gains.** On February 20, 2025, the claimant participated in a BND investment, receiving an allocation of 8,350 units and yielding a profit of $183,000. Following this transaction, total funds in the EB Trading Platform rose to $389,159.

14. On February 22, 2025, Ms. Shelley promoted a new Initial Coin Offering (ICO) known as QNCX, in which the claimant invested $462,000 on February 24, 2025. By March 8, 2025, the claimant received an allocation of 46,560 QNCX tokens, which were subsequently sold, increasing their account balance to $3,390,116. See Exhibit 2 and 3.

15. **Further Investment and Loan Transactions.** On March 11, 2025, the claimant invested their entire balance into another ICO, NVE. In pursuit of further investments, they repaid a $35,000 loan on March 20, 2025, and borrowed an

additional $300,000 to purchase more NVE. On March 31, 2025, after selling all NVE holdings, the total funds in the EB Trading Platform had reached $35,115,369. Plaintiff was and still is unable to withdraw these funds. Exhibit 4.

## IV. FACTUAL ALLEGATIONS

### A. Defendants' Fraudulent Investment Scheme

16. Defendants devised and executed an elaborate cryptocurrency Ponzi scheme falsely marketed as an **AI-driven trading program**, which promised exceptionally high returns to investors. Instead of using proprietary AI tools for legitimate financial trading, Defendants systematically misappropriated investor funds, falsified account balances, and obstructed withdrawals.

### B. Key Events Leading to Plaintiff's Injury

17. On **January 6, 2025**, DFRC contacted Plaintiff under the guise of allowing him to "train" its AI-powered trading program. DFRC instructed Plaintiff to open an account with EB, which deposited an initial $300 as "test capital."

18. Between **January 7–9, 2025**, DFRC's agent, **Evelyn Shelley**, directed Plaintiff to enroll in a financial program allegedly overseen by **Professor Johnson**, inducing Plaintiff to invest $12,000 ($2,000 via Coinbase and $10,000 via wire transfer to EB).

19. Between **February 20–March 31, 2025**, Defendants manipulated Plaintiff's investment by fabricating profit statements exceeding **$35,115,369**, falsely representing high-value investments in fraudulent **Initial Coin Offerings (ICOs)** such as QNCX and NVE.

20. Defendants systematically blocked withdrawals, manipulated balances, and diverted new investor funds to pay earlier participants—hallmarks of a Ponzi scheme.

## V. CAUSES OF ACTION

### COUNT I – FRAUDULENT MISREPRESENTATION

21. Plaintiff re-alleges and incorporates every allegation contained in paragraphs 1 thorough 21 above as if full set forth herein

22. Defendants Everard Burke Inc. ("EB"), Digital Finance Research Corp. ("DFRC"), Clare Anna Cathrine Gohee De Buhr, Hanna Elizabeth Polansky, and Evelyn Shelley (collectively, "Defendants") knowingly made false representations of material facts to Plaintiff Steven Opella. Specifically, Defendants falsely represented that:

- Their AI-driven cryptocurrency trading program was a legitimate investment tool capable of generating "exceptionally high returns" through proprietary algorithms and "20 Game Winning Streak" trading signals.
- Investments in Initial Coin Offerings (ICOs) such as QNCX and NVE were genuine, high-value opportunities.
- Plaintiff's EB Trading Platform account balances, which purportedly grew to over $35 million, reflected real profits.
- Plaintiff could withdraw funds at any time.

23. These representations were material because they directly concerned the profitability, legitimacy, and liquidity of the investments, which a reasonable investor would rely on when deciding to commit substantial capital.

24. Defendants knew these representations were false or made them recklessly without knowledge of their truth. The AI program was a fabrication, as Defendants operated a Ponzi scheme that relied on new investor funds to pay fictitious "profits" to earlier investors. The QNCX and NVE ICOs were fraudulent, and account balances were manipulated to conceal the misappropriation of funds. Defendants' knowledge is evidenced by:

- The systematic falsification of trading records and profit statements (e.g., falsely reporting $35,115,369 in gains by March 31, 2025).
- The obstruction of Plaintiff's withdrawal attempts, demonstrating awareness that no legitimate funds existed.
- The use of new investor deposits to sustain the scheme, a hallmark of Ponzi fraud.

25. Defendants made these false representations with the specific intent to induce Plaintiff to invest and retain funds in the scheme. For example:

- On January 6–9, 2025, Evelyn Shelley, acting on behalf of DFRC and EB, directed Plaintiff to deposit $12,000 and enroll in programs like the "20 Game Winning Streak."
- On February 22–24, 2025, Defendants promoted the fraudulent QNCX ICO, inducing Plaintiff to invest $462,000.
- False profit reports were designed to encourage additional investments, including a $50,000 and $250,000 loan taken by Plaintiff.

26. Plaintiff justifiably relied on Defendants' misrepresentations to his detriment. In reliance on Defendants' claims:

- Plaintiff deposited $12,000 of personal funds into the EB Trading Platform between January 8–10, 2025.
- He invested $462,000 in the QNCX ICO and additional sums in NVE, including borrowed funds.
- He refrained from withdrawing funds due to Defendants' fabricated balances and false assurances of liquidity.

27. As a direct and proximate result of this reliance, Plaintiff suffered actual damages exceeding $38,000,000. Defendants' fraudulent concealment of the Ponzi scheme further deprived Plaintiff of the opportunity to mitigate losses.

28. Clare Anna Cathrine Gohee De Buhr (Everard Burke's owner) and Hanna Elizabeth Polansky (Digital Finance Research Corp.'s owner) directly controlled and participated in the scheme, authorizing deceptive marketing and fund diversion. Evelyn Shelley, as an agent of both entities, executed the fraud through direct communications with Plaintiff. All Defendants are jointly and severally liable.

29. WHEREFORE, Plaintiff Steven Opella respectfully requests:

   I.   Compensatory damages for actual losses.

   II.  Punitive damages under 18 U.S.C. § 3571.

   III. Restitution of all unlawfully obtained funds.

   IV.  Injunctive relief to freeze Defendants' assets.

   V.   Any other relief this Court deems just.

## COUNT II – WIRE FRAUD (18 U.S.C. § 1343)

30. Plaintiff re-alleges and incorporates every allegation contained in paragraphs 1 thorough 29 above as if full set forth herein

31. Defendants used interstate communications, electronic transactions, and financial institutions (including Schwab and Coinbase) to facilitate and perpetuate their fraudulent scheme.

32. Defendants Everard Burke Inc. ("EB"), Digital Finance Research Corp. ("DFRC"), Clare Anna Cathrine Gohee De Buhr, Hanna Elizabeth Polansky, and Evelyn Shelley (collectively, "Defendants") knowingly and willfully devised a scheme to defraud Plaintiff Steven Opella and other investors by:

- Falsely representing that their AI-driven cryptocurrency trading program generated "exceptionally high returns" through proprietary algorithms and "20 Game Winning Streak" trading signals.
- Promoting fraudulent Initial Coin Offerings (ICOs), including QNCX and NVE, as legitimate investment opportunities.
- Fabricating account balances (e.g., falsely reporting $35,115,369 in profits by March 31, 2025) to induce continued investments.
- Obstructing withdrawal requests to conceal the misappropriation of funds and sustain the Ponzi scheme.

33. In furtherance of the scheme, Defendants used interstate wire communications, including:

- **January 8, 2025**: Plaintiff transferred $2,000 from his Coinbase account (a digital platform operating across state lines) to EB's platform under Evelyn Shelley's direction.
- **January 9–10, 2025**: Plaintiff wired $50,000, respectively, from his Charles Schwab brokerage account (a national financial institution) to EB via interstate banking systems.
- **February 24, 2025**: Plaintiff transmitted $462,000 to invest in the sham QNCX ICO through electronic wire transfers processed by interstate financial networks.
- **March 2025**: Defendants sent fraudulent profit reports and instructions via email (transmitted over interstate servers) to induce Plaintiff's $50,000 loan and additional NVE investments.

34. These wire transmissions were essential to executing the fraud, enabling Defendants to solicit, receive, and misappropriate funds across state lines.

35. Defendants acted with specific intent to defraud, as evidenced by:

36. As a direct and foreseeable result of Defendants' wire fraud, Plaintiff suffered actual losses exceeding $38,000,000.00.

37. WHEREFORE, Plaintiff Steven Opella respectfully requests:

VI.    Compensatory damages for actual losses.

VII.   Punitive damages under 18 U.S.C. § 3571.

VIII.  Restitution of all unlawfully obtained funds.

IX.    Injunctive relief to freeze Defendants' assets.

X.     Any other relief this Court deems just.

**COUNT III – RICO VIOLATIONS (18 U.S.C. § 1962)**

38. Plaintiff re-alleges and incorporates every allegation contained in paragraphs 1 thorough 37 above as if full set forth herein

39. Defendants committed multiple predicate acts, including wire fraud and money laundering, constituting an unlawful **RICO enterprise** designed to defraud investors.

40. Defendants Everard Burke Inc. ("EB"), Digital Finance Research Corp. ("DFRC"), Clare Anna Cathrine Gohee De Buhr, Hanna Elizabeth Polansky, and Evelyn Shelley (collectively, the "**Enterprise**") constituted an **association-in-fact enterprise** under 18 U.S.C. § 1961(4). The Enterprise operated as a continuing unit with a **common purpose**: to defraud investors through a fraudulent AI-driven cryptocurrency Ponzi scheme. The Enterprise's structure included:

- o *EB*: Provided the fraudulent trading platform and processed investor funds.
  - o *DFRC*: Developed sham AI tools and promoted fraudulent ICOs (e.g., QNCX, NVE).
  - o *De Buhr and Polansky*: Directed the scheme as owners of EB and DFRC, respectively.
  - o *Shelley*: Acted as a liaison, transmitting false instructions and profit reports to investors.
- **Activities**: Soliciting investments, fabricating account balances, obstructing withdrawals, and diverting funds to sustain the Ponzi scheme.

41. Defendants engaged in a **pattern of racketeering activity** through multiple interrelated acts of **wire fraud** (18 U.S.C. § 1343), constituting predicate offenses under 18 U.S.C. § 1961(1)(B). Key predicate acts include:

- **January 8, 2025**: Interstate wire transfer of $2,000 from Plaintiff's Coinbase account to EB.
- **January 9–10, 2025**: Interstate wire transfers of $50,000 from Plaintiff's Charles Schwab account to EB.
- **February 24, 2025**: Interstate wire transfer of $462,000 to fund the fraudulent QNCX ICO.
- **March 2025**: Interstate emails transmitting falsified profit statements and instructions to invest $50,000 in NVE.

42. These acts (1) are **related** (common scheme to defraud) and (2) demonstrate **continuity** (repeated over months and intended to persist indefinitely).

43. Each Defendant **conducted or participated in the Enterprise's affairs** through a pattern of racketeering:

- *De Buhr and Polansky*: Controlled corporate operations, authorized fraudulent marketing, and diverted funds.
- *Shelley*: Executed the scheme by directly communicating false statements to Plaintiff.
- *Everard Burke and Digital Finance Research Corp*: Served as vehicles to launder funds and legitimize the fraud.

44. The Enterprise affected **interstate commerce** by:

- Using interstate wire communications (e.g., cross-border financial transactions, emails).
- Targeting investors in Texas, California, and New Jersey.
- Utilizing cryptocurrency platforms and national financial institutions (Coinbase, Charles Schwab).

45. Plaintiff suffered **actual financial injury** directly caused by Defendants' RICO violations, including:

- **$524,000** in lost principal investments.
- **$50,000** in loan liabilities incurred to fund fraudulent ICOs.
- **Lost opportunity costs** and damages from inability to access purported $38 million in falsified profits.

46. Defendants conspired to violate § 1962(c) by agreeing to:

- Use Everard Burke and Digital Finance Research Corp. as instruments of fraud.
- Commit wire fraud to solicit and misappropriate funds.
- Falsify records to conceal the Ponzi scheme.

47. **WHEREFORE**, Plaintiff Steven Opella respectfully requests:

    I.    Treble damages under 18 U.S.C. § 1964(c) for losses exceeding $1,722,000.00

    II.    Attorneys' fees, litigation costs, and prejudgment interest.

    III.    Injunctive relief to dismantle the Enterprise and freeze assets.

    IV.    Damages in Loss Profits of $38,000,000.00

V.    Dissolution or reorganization of both Everard Burke Inc. and Digital Finance Research Corp. under 18 U.S.C. § 1964(a).

## COUNT IV – PONZI SCHEME

48. Plaintiff re-alleges and incorporates every allegation contained in paragraphs 1 thorough 47 above as if full set forth herein

49. Defendants knowingly operated an **illegal Ponzi scheme**, using funds obtained from newer investors to fabricate returns for earlier participants.

50. Defendants Everard Burke Inc. ("EB"), Digital Finance Research Corp. ("DFRC"), Clare Anna Cathrine Gohee De Buhr, Hanna Elizabeth Polansky, and Evelyn Shelley (collectively, "Defendants") operated a **Ponzi scheme** disguised as an AI-driven cryptocurrency trading program. The scheme's structure inherently required the continuous recruitment of new investors to pay fictitious "returns" to prior investors, rather than generating legitimate profits. Key hallmarks include:

- **Misappropriation of Funds**: Defendants diverted Plaintiff Steven Opella's investments (totaling $524,000, including $35,115,369 in funds reported on March 31, 2025.
- **Artificial Returns**: Returns from sham investments (e.g., QNCX and NVE ICOs) were derived solely from new investor capital, not market activity or AI algorithms.
- **Collapse Prevention Tactics**: Defendants obstructed withdrawals (¶21) to delay discovery and sustain the scheme.

51. Defendants knowingly made false statements to induce investments, including:

- Claims that the AI program generated "exceptionally high returns" through a "20 Game Winning Streak" strategy (January 7, 2025).
- Promotion of fraudulent ICOs as legitimate opportunities (February 22–24, 2025).
- Fabricated account statements showing illusory profits (e.g., $3,390,116 from QNCX on March 8, 2025).

52. Defendants acted with **intent to deceive**, as shown by:

- The Ponzi structure itself, which is inherently fraudulent (*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006)).
- False assurances from Evelyn Shelley (e.g., blocking withdrawals while touting a "secure" $35 million balance).
- Concealment of the source of "returns" (new investor funds) and the absence of legitimate trading activity.

53. Plaintiff justifiably relied on Defendants' misrepresentations, resulting in:

- Direct losses of **$524,000** in principal investments.
- Additional **$300,000** in loan liabilities incurred to fund fraudulent ICOs.
- Inability to recover purportedly earned "profits" due to Defendants' obstruction.
- *Including $35,115,369 in funds reported on March 31, 2025.
- *Losses of funds that were quoted in final winnings after final market run.

54. The investments constituted "securities" under the *Howey Test* (SEC v. W.J. Howey Co., 328 U.S. 293 (1946)), and Defendants violated **Tex. Rev. Civ. Stat. art. 581-33** by:

- Selling unregistered securities (ICOs like QNCX and NVE).
- Making material misstatements in connection with securities transactions.

55. **WHEREFORE**, Plaintiff Steven Opella respectfully requests:

    I.    Treble damages under 18 U.S.C. § 1964(c) for losses exceeding $1,722,000.00 and under under Tex. Rev. Civ. Stat. art. 581-33.

    II.    Punitve Damages for Defendants' knowing and malicious conduct.

    III.    Attorneys' fees, litigation costs, and prejudgment interest.

    IV.    Injunctive relief to dismantle the Enterprise and freeze assets.

    V.    Damages in Loss Profits of $38,000,000.00

    VI.    Dissolution or reorganization of both Everard Burke Inc. and Digital Finance Research Corp. under 18 U.S.C. § 1964(a).

## COUNT V – TEXAS DECEPTIVE TRADE PRACTICES ACT (Tex. Bus. & Com. Code § 17.46)

56. Plaintiff re-alleges and incorporates every allegation contained in paragraphs 1 thorough 55 above as if full set forth herein

57. Defendants engaged in fraudulent business practices, falsely advertising financial products and misrepresenting investment risks.

58. Plaintiff Steven Opella qualifies as a **"consumer"** under Tex. Bus. & Com. Code § 17.45(4) because he sought or acquired investment services (the AI-driven cryptocurrency trading program and ICOs) by purchase or lease from Defendants Everard Burke Inc. ("EB"), Digital Finance Research Corp. ("DFRC"), Clare Anna

Cathrine Gohee De Buhr, Hanna Elizabeth Polansky, and Evelyn Shelley (collectively, "Defendants").

59. Defendants engaged in **false, misleading, or deceptive acts** prohibited under the DTPA, including but not limited to:

- **Misrepresenting Investment Characteristics** (§ 17.46(b)(5)): Falsely claiming their AI program generated "exceptionally high returns" through a "20 Game Winning Streak" strategy and that ICOs (e.g., QNCX, NVE) were legitimate opportunities.
- **Failing to Disclose Material Information** (§ 17.46(b)(24)): Concealing that the program was a Ponzi scheme reliant on new investor funds to pay fictitious returns.
- **Bait-and-Switch Tactics** (§ 17.46(b)(9)): Advertising a legitimate AI trading platform but providing a sham program that blocked withdrawals.
- **Fraudulent Profit Reports** (§ 17.46(b)(7), (12)): Fabricating account balances (e.g., $35,115,369 on March 31, 2025) to induce further investments.

60. Plaintiff relied on Defendants' deceptive acts to his detriment. Specifically:

- He invested **$524,000** in personal and borrowed funds based on false assurances of profitability and liquidity.
- He retained investments due to fabricated account balances and Defendants' obstruction of withdrawals.

61. Plaintiff suffered **actual economic damages** of at least **$574,000** (principal investments + loan liabilities) directly caused by Defendants' DTPA violations.

62. **Knowing Violation and Elderly Abuse Enhancement:**

- Promoting complex, high-risk cryptocurrency investments to an elderly individual.
- Using fabricated "AI" terminology to create a false sense of security and sophistication.
- Pressuring Plaintiff to take out a **$300,000 loan** to fund fraudulent ICOs, exacerbating financial harm.

63. **Knowing Conduct**: Defendants acted with **actual awareness** of the scheme's falsity, as shown by their Ponzi structure and obstruction of withdrawals

64. WHEREFORE, Plaintiff Steven Opella respectfully requests:

    I.    Treble damages under Tex. Bus. & Com. Code § 17.50(b)(1) for knowing violations.

    II.    Punitve Damages for Defendants' knowing and malicious conduct.

    III.    Additional Damages (up to $250,000) under § 17.50(h) for exploitation of an elderly consumer.

    IV.    Attorneys' Fees and Costs under § 17.50(d).

    V.    Attorneys' fees, litigation costs, and prejudgment interest.

    VI.    Injunctive relief to dismantle the Enterprise and freeze assets.

    VII.    Damages in Loss Profits of $38,000,000.00

## COUNT VI – BREACH OF CONTRACT

65. Plaintiff re-alleges and incorporates every allegation contained in paragraphs 1 thorough 64 above as if full set forth herein

66. Defendant **Everard Burke and Digital Finance Research Corp.** breached its user agreement by failing to allow Plaintiff lawful access to his deposited funds.

67. Plaintiff Steven Opella entered into a **valid and enforceable contract** with Defendants Everard Burke Inc. ("EB"), Digital Finance Research Corp. ("DFRC"), Clare Anna Cathrine Gohee De Buhr, Hanna Elizabeth Polansky, and Evelyn Shelley (collectively, "Defendants"). The contract, formed through Defendants' representations and Plaintiff's performance, obligated Defendants to:

- Provide access to a legitimate AI-driven cryptocurrency trading platform.
- Execute trades and manage investments in accordance with promised strategies (e.g., "20 Game Winning Streak" program).
- Allow Plaintiff to withdraw funds from his EB Trading Platform account at any time.

68. The contract was established through:

- Actual Contract: Digital finance Corporation: Matrix Contract.  (Exhibit 1).
- **Express Terms**: Defendants' written and oral assurances, including instructions from Evelyn Shelley (e.g., January 7–10, 2025 communications directing Plaintiff to fund the account and retain profits).
- **Implied Terms**: Industry standards and course of dealing, whereby Defendants accepted Plaintiff's deposits and purported to manage investments in exchange for fees or other consideration.

69. Plaintiff fully performed his obligations under the contract by:

- Depositing **$524,000** into the EB Trading Platform as directed (January 8–March 31, 2025).
- Following Defendants' instructions to invest in ICOs (e.g., QNCX, NVE) and execute trades.

- Complying with all account requirements and directives provided by Defendants.

70. Defendants materially breached the contract by:

- **Failing to Provide Promised Services**: The AI-driven trading program was a sham, and no legitimate investment activity occurred.
- **Blocking Withdrawals**: Despite contractual assurances of liquidity, Defendants obstructed Plaintiff's attempts to withdraw funds (¶21).
- **Misappropriating Funds**: Diverting Plaintiff's investments to sustain a Ponzi scheme rather than executing trades.

71. As a direct and proximate result of Defendants' breach, Plaintiff suffered **actual damages** of at least **$524,000** in lost principal investments, plus additional losses from:

- **Lost Profits**: Falsified account balances (e.g., $38,000,000) reflecting unattainable gains.
- **Loan Liabilities**: $300,000 borrowed to fund fraudulent ICOs.
- **Incidental Costs**: Fees, interest, and opportunity costs.

72. **WHEREFORE**, Plaintiff Steven Opella respectfully requests

    I.   **Compensatory Damages for breach of contract.**

    II.  **Reliance Damages to restore Plaintiff to his pre-contract position.**

    III. **Prejudgment and Post-Judgment interest.**

    IV.  **Attorneys' fees and costs.**

## COUNT VII – CONVERSION

73. Plaintiff re-alleges and incorporates every allegation contained in paragraphs 1 thorough 72 above as if full set forth herein

74. Defendants unlawfully converted Plaintiff's assets, refusing to return funds despite repeated withdrawal attempts.

75. Plaintiff Steven Opella had lawful ownership and possession of at least $524,000 in funds transferred to Defendants Everard Burke Inc. ("EB"), Digital Finance Research Corp. ("DFRC"), Clare Anna Cathrine Gohee De Buhr, Hanna Elizabeth Polansky, and Evelyn Shelley (collectively, "Defendants") through:

- Direct deposits into the Trading Platform totalling over $524,000.00
- Profits purportedly earned from sham investments (e.g., $35,115,369 balance falsely reported on March 31, 2025), which Plaintiff was contractually entitled to withdraw.

76. Defendants unlawfully exercised dominion and control over Plaintiff's funds, inconsistent with his ownership rights, by:

- **Misappropriating Funds**: Diverting Plaintiff's investments to sustain a Ponzi scheme rather than executing legitimate trades.
- **Blocking Withdrawals**: Refusing Plaintiff's contractual and statutory right to access his account balance.
- **Commingling Funds**: Mixing Plaintiff's assets with other investors' money to conceal theft.

77. Plaintiff's right to recover his funds arose upon Defendants' **failure to honor withdrawal requests**, which constituted a constructive refusal to return the property. Under Texas law, no explicit demand is required when such a demand would be futile. *E.g.,* Defendants' obstruction of withdrawals rendered any formal demand meaningless.

78. Defendants' conversion caused Plaintiff **actual damages** of at least **$524,000** (principal investments), plus:

- **Lost Profits**: The value of Plaintiff's illusory $38 million balance, to the extent recoverable under equity.
- **Punitive Damages**: Defendants' intentional and malicious conduct justifies exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003.

79. **WHEREFORE**, Plaintiff Steven Opella respectfully requests

   I.   **Actual Damages for Converted Funds.**

   II.  **Punitive Damages for Defendants' willful misconduct.**

   III. **Equitable Relief, including a constructive trust over Defendants' assets traceable to Plaintiff's funds.**

   IV.  **Prejudgment interest, attorneys' fees and costs.**

## COUNT VIII – UNJUST ENRICHMENT

80. Plaintiff re-alleges and incorporates every allegation contained in paragraphs 1 thorough 29 above as if full set forth herein

81. Plaintiff Steven Opella conferred a substantial financial benefit upon Defendants Everard Burke Inc. ("EB"), Digital Finance Research Corp. ("DFRC"), Clare Anna Cathrine Gohee De Buhr, Hanna Elizabeth Polansky, and Evelyn Shelley (collectively, "Defendants") by transferring funds totaling at least $524,000.00 to Defendants' fraudulent cryptocurrency trading program. These funds were deposited into the EB Trading Platform and invested in sham Initial Coin Offerings (ICOs) such as QNCX and NVE, as directed by Defendants.

82. Defendants knowingly accepted and retained the full value of Plaintiff's investments. They utilized these funds to perpetuate a Ponzi scheme, diverting portions to pay fictitious "profits" to earlier investors, falsify account balances, and enrich themselves. For example:

- Defendants' false representations of a $35,115,369 balance in Plaintiff's EB account demonstrate their retention of Plaintiff's principal investments.

- Defendants obstructed Plaintiff's withdrawal attempts , confirming their control and unjust retention of the funds.

- Individual Defendants Clare Anna Cathrine Gohee De Buhr and Hanna Elizabeth Polansky, as owners of EB and DFRC respectively, directly controlled corporate accounts and personally benefited from the scheme.

83. It would be inequitable for Defendants to retain Plaintiff's funds because:

- The transactions were induced by fraudulent misrepresentations (e.g., fictitious AI trading programs, fabricated ICOs).

- Defendants provided no legitimate services or investment returns in exchange for Plaintiff's funds.

- The scheme's Ponzi structure confirms that Defendants lacked any lawful entitlement to Plaintiff's principal investments.

## VI. PRAYER FOR RELIEF

Plaintiff demands the following relief:

- **Compensatory damages of $35,115,369** (total misappropriated funds);

- **Treble damages** pursuant to **RICO and Texas DTPA**;

- **Punitive damages** to deter similar fraudulent conduct;

- **Attorney's fees and litigation costs**;

- **Immediate injunctive relief** freezing Defendants' assets;

- **Trial by jury** on all issues triable as a matter of right.

Plaintiff Steven Ray Opella demands a trial by jury on all issues triable.

Steven Ray Opella, pro se
6253 Bandolero Drive
El Paso, Texas 79912
Steven0701@aol.com